*PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOHAMMED AL-QAHTANI, et al., )<br>    *Petitioners*, )<br>  )<br>v.  )<br>  )<br>GEORGE W. BUSH, et al., )<br>    *Respondents*. ) | Civil Action No. 05-cv-1971 (RMC) |

**PETITIONERS' MEMORANDUM IN OPPOSITION TO RESPONDENTS' MOTION TO STAY PROCEEDINGS PENDING RELATED APPEALS AND MOTION TO STAY ORDER TO SHOW CAUSE PENDING RESOLUTION OF RESPONDENTS' MOTION TO STAY PROCEEDINGS**

Petitioner Mohammed Al-Qahtani ("Petitioner Al-Qahtani") and his Next Friend, through their counsel, submit this Opposition to Respondents' Motion to Stay Proceedings Pending Related Appeals and Motion to Stay Order to Show Cause Pending Resolution of Respondents' Motion to Stay Proceedings (the "Motion"), filed on December 8, 2005. For the reasons stated below, Petitioner respectfully requests that this Court deny Respondents' motion to stay proceedings and motion to delay submission of a factual return.

Respondents have filed a motion to stay proceedings in this case, pending resolution of the appeals in earlier *habeas* petitions filed by other men imprisoned at Guantánamo Bay Naval Station which raise similar claims as the present petition. The Motion should be denied in its entirety because Respondents cannot satisfy the standards for a stay, and any minimal inconvenience imposed on Respondents to defend Petitioner Al-Qahtani's prolonged incarceration is far outweighed by the harm to Petitioner, and the likelihood for greater judicial inconvenience resulting from numerous cases proceeding simultaneously in the future when the stays for the various cases will be lifted.

Alternatively, if this Court is inclined to grant Respondents relief, Petitioner requests that any stay entered in this matter prevent irreparable injury to Petitioner. Specifically, Petitioner requests that if this Court enters a stay, it should (a) require 30 days' advance notice of Respondents' intended transfer of Petitioner into the custody of another country or to another facility under U.S. control, (b) require Respondents to promptly issue a factual return, and (c) require Respondents to continue providing Petitioner unobstructed access to counsel. While Petitioner Al-Qahtani acknowledges that this Court has already entered a stay order in related Guantánamo *habeas* petitions, the relief sought by Respondents in this case is far broader than the relief granted in prior stay orders issued by this Court. *See, e.g.*, *Sadkhan v. Bush, et al.*, Civ. Action No. 05-cv-1487 (RMC) (dkt. no. 13, Order of November 4, 2005). First, Respondents sought to stay proceedings in this Petition prior to counsel's initial meeting and consultation with Petitioner Al-Qahtani to determine what interim relief is necessary in his case.[1] Second, Respondents seek to delay the filing of a factual return, and moved to do so the day after this Court issued an Order to Show Cause. Any such relief would essentially abolish the *habeas* statute and would eliminate the only individualized information being provided by the Respondents about Petitioner Al-Qahtani in a lawful court.[2] This would also eviscerate counsel's ability to hold meaningful discussions with Petitioner about the Respondents' alleged basis for his detention.

Accordingly, for the reasons set forth below, this Court should deny Respondents' Motion and enforce the Order to Show Cause requiring Respondents to provide a factual return by December 27, 2005. If this Court decides to grant a stay notwithstanding these arguments,

---

[1] Counsel for Petitioner conducted the initial client meeting with him from December 13-15, 2005. During this meeting, counsel discussed the Respondents' present motion with Petitioner Al-Qahtani and the need to seek his factual return as well as other potential interim relief.

[2] As noted below, despite their present attempt to avoid filing a factual return in federal court, Respondents have discussed their individualized factual claims against Petitioner Al-Qahtani extensively in the press and before various congressional committees.

however, the stay should specifically include the requirements set forth above and also preserve sufficient flexibility to address other matters that may unexpectedly arise, for example, in connection with new filings precipitated by notice of an impending transfer into continuing custody.

## BACKGROUND

On October 5, 2005, Petitioner filed a Petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. §2241 against Respondents challenging the legality of his detention under the Constitution, laws, and treaties of the United States, and seeking declaratory and injunctive relief. Petitioner, a citizen of Saudi Arabia, alleges that he is not, nor has he ever been, an "enemy combatant" and that he has been unlawfully detained by Respondents at the United States Naval Base at Guantánamo Bay, Cuba ("Guantánamo") for nearly four years.

Respondents have failed to disclose in federal court any factual basis for the continued detention of Petitioner. On December 7, 2005, this Court issued an Order to Show Cause ("Dec. 7, 2005 Order"), mandating that the Respondents "show cause why this writ should not be granted" by December 27, 2005.

The day after this Court's order, on December 8, 2005, Respondents filed the present Motion to stay proceedings pending the resolution of all appeals in *In re Guantanamo Cases*, No. 02-cv-0299, *et al.*, 355 F.Supp. 2d 443(D.D.C. 2005), *appeal on petition for interlocutory appeal*, No. 05-5064 (D.C. Cir. Mar. 10, 2005), and *Khalid v. Bush* and *Boumediene v. Bush*, Nos. 04-cv-1142 (RJL), 04-cv-1166 (RJL), 355 F.Supp.2d 311 (D.D.C. 2005), *appeals docketed* Nos. 05-5062, 05-5063 (D.D.C. Mar. 2, 2005). The Respondents argue that because these appeals present the "core issues" in this petition: "It makes no sense for this case to proceed prior to resolution of the appeals; further proceedings would require the expenditure of significant judicial and other resources that may be avoided as a result of the appeals, and, in any event,

such proceedings very likely would have to be revisited or relitigated once the appeals are decided and the Court of appeals provides guidance regarding the handling of the claims in all of the Guantanamo detainee cases." Resp. Mot. at 1-2. The Respondents further argue that, in light of this, they should not be required to submit a factual return, as mandated by this Court's December 7, 2005 Order to Show Cause, during the pendency of the stay in order to avoid the logistical burdens of preparing the factual return and the increased risk of disclosure of classified information contained in the factual return by Petitioner's counsel.

Prior to the Respondents' present efforts to avoid any proceedings on the merits and to avoid submitting a factual return for Petitioner Al-Qahtani, Respondents widely publicized controversial accusations against Petitioner in various press releases in response to disclosures about the abusive interrogation tactics U.S. personnel used against him. On June 11, 2005, *Time* magazine published excerpts from a classified 84-page interrogation log for Petitioner Al-Qahtani detailing highly aggressive interrogation tactics used against him by U.S. personnel.[3] According to the interrogation log, U.S. personnel subjected Petitioner Al-Qahtani to tactics that included severe sleep deprivation (including being prevented from sleeping for three days), interrogation sessions lasting over twenty consecutive hours, intravenous force-feeding of liquids until he urinated on himself, being stripped naked, being forced to bark like a dog, sexual assault and religious humiliation by female interrogators, and severe sensory over-stimulation. In at least one instance, Petitioner Al-Qahtani was also forced to undergo a phony kidnapping, during which he was injected with tranquilizers and taken up on a plane wearing blackened goggles. During one of these interrogation sessions, his heart rate also dropped so low that immediate

---

[3] Adam Zagorin & Michael Duffy, *Inside the Interrogation of Detainee 063*," Time, June 11, 2005; *see also* Jane Mayer, *The Experiment*, The New Yorker, July 11/18, 2005 (describing the interrogation and abuse of Petitioner Al-Qahtani).

medical care was necessary to stabilize and revive him. Once stabilized, his interrogation sessions resumed.

In response to the disclosures about Petitioner Al-Qahtani's mistreatment, Respondents have extensively discussed Petitioner's interrogations and detention in the media and before congressional committees. This includes public testimony by Army Gen. Bantz Craddock, the chief of U.S. Southern Command, to the Senate Armed Forces Committee on July 13, 2005, highlighting Petitioner Al-Qahtani's interrogation and information obtained from him after the application of "aggressive" interrogation tactics.[4]

At some point prior to the filing of this petition, Respondents conducted a Combatant Status Review Tribunal (CSRT) for Petitioner Al-Qahtani,[5] and concede in their Motion that the CSRT record "typically" constitutes the factual return to a habeas petition filed by an individual imprisoned at Guantánamo. Resp. Mot. at 11 n.8.

For the reasons stated below, this Court should deny Respondents' Motion to stay proceedings in this case and should order the Respondents to comply with this Court's December 7, 2005 Order to Show Cause mandating submission of a factual return by December 27, 2005.

---

[4] *See* Kathleen T. Rhem, *High-Level Detainee Providing Valuable Intelligence*, Am. Forces Press Serv., July 14, 2005, *available at* http://www.defenselink.mil/news/Jul2005/20050714_2062.html; *see also DoD News Briefing with Secretary Rumsfeld and General Pace*, U.S. Dep't of Defense News Transcript, June 14, 2005, *available at* http://www.defenselink.mil/transcripts/2005/tr20050614-secdef3042.html (quoting Secretary of Defense Donald H. Rumsfeld making assertions concerning Petitioner Al-Qahtani's alleged conduct); *Guantanamo Provides Valuable Intelligence Information*, U.S. Dep't of Defense New Release, June 12, 2005, *available at* http://www.defenselink.mil/releases/2005/nr20050612-3661.html (detailing Petitioner Al-Qahtani's alleged conduct to justify the highly aggressive interrogation methods used against him).

[5] By July 2005, a CSRT was conducted for every prisoner in the custody of the Department of Defense ("DOD") at Guantánamo. *See* Jennifer K. Elsea, Leg. Atty., Am. Law Div., *CRS Report for Congress: Detainee at Guantanamo Bay* (July 20, 2005), at 2, *available at* http://www.fas.org/sgp/crs/natsec/RS22173.pdf.

**ARGUMENT**

I.  **THIS COURT SHOULD DENY RESPONDENTS' MOTION TO STAY THE PROCEEDINGS BECAUSE RESPONDENTS FAIL TO SATISFY THE STANDARDS FOR A STAY PENDING APPEAL**

Although the district court may have the authority to impose a stay pending appeal, a stay is unjustified in the present case because the Respondents fail to satisfy the "stringent standards required for a stay pending appeal" that this Court recently recognized. *See Judicial Watch, Inc. v. National Energy Policy Development Group*, 230 F. Supp. 2d 12, 14 (D.D.C. 2002) (citations and quotations omitted).[6] "[I]n deciding to stay proceedings indefinitely, a trial court must first identify a pressing need for the stay" and "then balance interests favoring a stay against interests frustrated by the action." *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997); *see also Klein v. Adams & Peck*, 436 F.2d 337, 339 (2nd Cir. 1971) ("The right to proceed in court should not be denied except under the most extreme circumstances."). Respondents as the moving party bear the burden of establishing the need for a stay in this case. *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.D.C. 1985) ("[I]t is the movant's obligation to justify the court's exercise of such an extraordinary remedy.").

Thus, under the test established by the D.C. Court of Appeals, in order to obtain a stay, the Respondents must prevail on the following questions:

> (1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? (2) Has the petitioner shown that without such relief, it will be irreparably injured? . . . (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? . . . [and] (4) Where lies the public interest?

---

[6] Although the underlying decision in *Judicial Watch* has a long history on appeal, it does not appear that the appellate courts ever addressed this Court's ruling on the motion to stay. *See, e.g. Judicial Watch*, 2003 W.L. 22319584 (D.C. Cir. 2003) (denying motion to stay appellate mandate on the ground that the parties had agreed that no substantive disclosures would be made during the appeal), *vacated*, 124 S. Ct. 2576 (2004).

*Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 943 (D.C. Cir. 1977) (citing *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).[7] A party seeking a stay of judicial proceedings "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. North American*, 299 U.S. 248, 255 (1936). *Accord*, *Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971). Moreover, in order to justify the stay, Respondents must demonstrate that the injury claimed is "certain and great." *Id.* at 976 (citations and quotations omitted).

For the reasons stated below, Respondents have not met their burden to justify a stay in Petitioner's case and this Court should deny the Motion.

### 1. Petitioner Is Likely to Succeed on the Merits of the Appeal

Respondents' Motion is silent on first element they must meet to justify a stay, the relative likelihood of success of Respondents' appeals, because it is an argument Respondents cannot win. The most difficult question of law in this case already has been adjudicated – and adjudicated in favor of Petitioners – by the highest court in the land. In *Rasul v. Bush*, 542 U.S. 466, 124 S.Ct. 2686 (2004), the Supreme Court held that Petitioners have a statutory right to seek *habeas* relief from federal district courts. In that case, five justices concluded that:

> In the end, the answer to the question presented is clear. Petitioners contend that they are being held in federal custody in violation of the laws of the United States.[] No party questions the District Court's jurisdiction over petitioners' custodians. Section 2241, by its terms, requires nothing more. We therefore hold that Section 2241 confers on the District Court jurisdiction to hear petitioners'

---

[7] Moreover, this case is further complicated by the fact that Respondents are not trying to stay proceedings while an interlocutory appeal is heard in the present case, but rather, they take the extraordinary position that they should be able to stay the present case pending an appeal in a different case, involving different parties not before this Court. In such a case, the standard for issuance of a stay should be even higher because the parties affected by the requested stay here have no control over or involvement in the appeal. Although Petitioner would assert that a stay is not appropriate in circumstances such as these, for the purposes of this Opposition only, Petitioner assumes that the *Virginia Petroleum* standard applies.

> habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base.

*Rasul*, 124 S.Ct. at 2698 (footnote and citations omitted). Moreover, the Court's statement in footnote 15 of *Rasul* supports the Petitioners' position that the Guantánamo detainees have substantive rights redressable by the *habeas* statute:

> Petitioners allegations – that, although they have engaged neither in combat nor in acts of terrorism against the United States, they have been held in Executive detention for more than two years in territory subject to the long-term, exclusive jurisdiction and control of the United States, without access to counsel and without being charged with any wrongdoing – unquestionably describe custody in violation of the Constitution or laws or treaties of the United States.

*Id*. at 2698 n.15. As the *Rasul* Court concluded,

> Whether and what further proceedings may become necessary after respondents make their response to the merits of petitioners' claims are matters that we need not address now. What is presently at stake is only whether the federal courts have jurisdiction to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing. Answering that question in the affirmative, we reverse the judgment of the Court of Appeals and *remand for the District Court to consider in the first instance the merits of petitioners' claims*.

*Id*. at 2699 (emphasis added).

The Court's reasoning and holding in *Rasul*, therefore, strongly suggests that the Supreme Court expected the federal district courts, including this Court, to conduct a meaningful hearing on the merits of the Petitioners' claims. While the exact scope of that hearing may be open to debate, *Rasul* at least requires consideration of the merits of Petitioners' continuing unlawful incarceration by an Article III judge. For Respondents to prevail on appeal (in a manner that would warrant a stay in this case), they must convince the Court of Appeals that *Rasul* is an empty vessel that grants Petitioners only the right to file a habeas petition, not a right

for this court to actually hear the merits of the petition. This Court should conclude that the Court of Appeals will not adopt such an eviscerated reading of *Rasul*.

While Judge Leon concluded that neither footnote 15 nor any other aspect of *Rasul* provides Guantánamo detainees with a basis for substantive relief, other judges in this court have disagreed with such a conclusion. *See, e.g.*, *In re Guantanamo Detainee Cases*, 355 F.Supp.2d 443 (D.D.C 2005); *see also Al Odah v. United States*, 346 F.Supp.2d 1, 8 (D.D.C. 2004) (recognizing that Guantánamo petitioners have a right to counsel after "[t]he Supreme Court . . . found that [p]etitioners have the right to bring their claims before this Court"). While the existence of a conflict among two of more judges of this Court certainly presents a basis for appeal, it in no way demonstrates a "strong showing" that Respondents are likely to prevail in that appeal. So long as detainees are entitled, as *Rasul* strongly suggests, to any hearing beyond the outright dismissal of their claims, then Respondents cannot be deemed likely to prevail on appeal.

Accordingly, in the absence of such a showing, this Court should not grant a stay and Respondents' Motion should be denied. *Washington Metro*, 559 F.2d at 943 (citations omitted).

### 2. The Balance of Harms Favors Petitioner

Respondents fail to establish that any proceedings in the present case would represent irreparable harm to them, and the inconvenience to Respondents cannot equal the immediate, irreparable and life-threatening harm faced by Petitioner by prolonging his already lengthy and continuing unlawful incarceration. As this Court has observed,

> Under this Circuit's precedent, the harms to each party are tested for "substantiality, likelihood of occurrence, and adequacy of proof." *Cuomo*, 772 F.2d at 976, 977. The Court must consider the significance of the change from the status quo which would arise in the absence of a stay, as well as likelihood of occurrence of the claimed injury, when determining whether [the moving party has] truly met [its] burden of demonstrating irreparable harm justifying imposition of a stay.

*Judicial Watch*, 230 F. Supp. 2d at 15.  Respondents fail to meet their burden of demonstrating irreparable harm justifying a stay under this standard because the administrative burdens on the government do not outweigh the injury facing Petitioner in light of the indefinite nature and the circumstances of Petitioner's incarceration.

      **a.**    **Petitioner Would Be Irreparably and Substantially Harmed By a Stay of Proceedings**

At the outset, a balancing of harms ought to begin with the recognition that Petitioner has been unlawfully incarcerated for nearly four years without any meaningful process.  Every delay in the adjudication of his petition harms Petitioner Al-Qahtani far more than the government; indeed, the comparative burdens of incarceration and increased administrative tasks cannot be measured on the same scale.  Moreover, Respondents have admitted to subjecting Petitioner Al-Qahtani to "aggressive" interrogation techniques that have undoubtedly left Petitioner suffering from psychological and, most likely, physical injuries.  Petitioner's ongoing indefinite detention without lawful process, in conditions of stress and isolation, prolong his undue suffering.  The circumstances of Petitioner Al-Qahtani's case also raise the substantial concern that he is being detained based solely upon unreliable or false statements extracted from him through torture or cruel, inhuman, or degrading treatment, in serious violation of the laws, Constitution, and treaties of the United States.  In the absence of proceedings in this petition, Petitioner Al-Qahtani will remain unjustly incarcerated and suffering from the effects of his "aggressive" interrogations.

Respondents also speak of a "stay pending appeal," but it is abundantly clear that the stay that the Respondents seek is indefinite.  Although perhaps not known at the time this Court entered prior stay orders, it is now apparent that the Court of Appeals for the District Court of Columbia will not issue its decision until the end of 2005 or beginning of 2006.  When the Court does issue its decision, either party facing an adverse ruling may seek *certiorari* in the Supreme

Court, delaying final resolution of the appeal for perhaps another year or more. If this Court grants the current Motion to stay, Petition may face another year or more of indefinite incarceration without having the opportunity to prepare his case, or even knowing the grounds for Respondents' allegations against him beyond statements extracted during "aggressive" interrogations.

Accordingly, Petitioner will suffer substantial irreparable harm from a stay of proceedings.

### b. Respondents Do Not Show Irreparable Injury

The irreparable harm to Petitioner of continued indefinite detention is not outweighed by Respondents' main argument that the denial of a stay in all detainee cases will create significant administrative burdens for the government and its lawyers. Resp. Mot. at 10-11, 12. The relevant question in any single case is the burden of one individual's continued unlawful detention against the administrative tasks a *habeas* petition imposes on the government for that individual. Here, that balancing favors Petitioner Al-Qahtani in light of the Respondents' extensive and far-reaching public accusations against him in the media and before congressional committees, as well as the government-documented abusive interrogation tactics used to extract statements from Petitioner Al-Qahtani under duress. The Respondents' efforts to condemn Petitioner Al-Qahtani in the court of public opinion based upon such statements are no substitute for the *habeas* review in federal court mandated by the Supreme Court in *Rasul*. Most importantly, Respondents' conduct indicates that they have reviewed Petitioner's case, gathered evidence purportedly justifying his detention, and have prepared reports for other institutions, including the press and congressional bodies. In light of Respondents' expenditure of resources to address Petitioner's detention in other forums, Respondents have presented no argument

suggesting how responding to Petitioner's case in federal court imposes a particular meaningful administrative burden.

Accordingly, this Court should deny Respondents' Motion because the irreparable and substantial harm to Petitioner Al-Qahtani is not outweighed by the administrative burden upon Respondents.

### 3. Public Interest Favors Denial of the Motion

#### a. The Court's Interest in Judicial Efficiency Is Not Served By a Stay

The Respondents' main theme in favor of a stay is that judicial efficiency will be served by waiting to see if the Court of Appeals reverses Judge Green's decision in *In re Guantanamo Detainee Cases*. As the Respondents point out, shortly before she returned to senior status, Judge Green stayed the cases before her in light of the appeal in the related cases in which Judge Leon had reached a contrary view.

Much has changed since then. The appeal calendar was not then known, but is now known to be one that will likely delay final resolution of the appeals potentially for over a year. CSRTs have now been completed for all of the prisoners at Guantánamo. Concerns about the rendition of prisoners into the custody of foreign governments have arisen and trial court intervention was necessary in connection with the force-feeding of prisoners on a hunger strike protest. At the time Judge Green issued her stay, no one could have predicted these turn of events

Indeed, the Respondents' efficiencies analysis ignores the most compelling ones. Judicial efficiency will best be served by moving the filed cases forward towards a hearing in a timely manner. Staying cases now risks procedural gridlock later. When the stay is lifted it will not be one hundred cases frozen in the starting blocks and clamoring for judicial attention. It will be five hundred. At that point each judge of this Court may have scores of petitions on his

or her docket.  It would become practically impossible to obtain a hearing.  As far as judicial efficiency is concerned, it makes far more sense to move cases steadily forward as they are filed, and to move them starting now.

It can also only help the appellate process for trial judges to develop a full factual record.  Appeals often result in remands for findings.  The "enemy combatant" status (which, as the Government conceded to Judge Green in *In re Guantanamo Detainee Cases*, embraces everyone from a person who plots a murderous bombing to a little old lady in Geneva who writes a check to the wrong "charity") is so broad that factual findings will undoubtedly be necessary to permit meaningful review.  One "enemy combatant" case may be very unlike another.  With factual findings, an appeals court may conclusively resolve a case that otherwise would have required remand and still further trial-court proceedings.  Therefore, judicial economy will best be served by moving forward towards a hearing.

Accordingly, Respondents' Motion for a stay should be denied.

### b.    A Stay Would Undermine Our Nation's Commitment to the Rule of Law

The Government asserts that it acts in the public interest by delaying consideration of the merits of Petitioner Al-Qahtani's *habeas* petition.  However, the public interest, as articulated in the federal *habeas* statute, is directly contradicted by the Respondents' Motion.  Thus, despite its procedural cloak, the relief requested here is substantive.  A stay of proceedings is simply a continuation of the unlawful detention without any lawful process, the precise conduct of which Petitioner complains.

The *habeas* statute prohibits vague and unlimited detentions in plain terms and federal courts should promptly address petitions for writ of *habeas corpus*.  The statute provides that Respondents must make their return "within three days unless for good cause additional time, not exceeding twenty days, is allowed."  28 U.S.C. § 2243 (emphasis added).  The day set for

hearing must be "not more than five days after the return unless for good cause additional time is allowed." *Id.*[8]  Even lawful detention must be abbreviated, and speedy-trial laws require military and other courts to free prisoners who are not quickly given a full hearing. *See, e.g.*, 10 U.S.C. § 810 (establishing speedy-trial rights under the Uniform Code of Military Justice); Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 2, 1949, 6 U.S.T. 3114, T.I.A.S. 3362 (including art. 103, which establishes a 90-day limit to unreviewed detentions).  Although Respondents argue that strict adherence to the deadlines in the habeas statute may prove unworkable in this case, these deadlines assuredly reflect the gravity of claims of unlawful detention, and the deeply embedded American tradition of prompt relief by writ of *habeas corpus*. To lay that tradition aside for an additional indefinite period, on top of a detention that has already stretched for years, would contradict this plain statutory intent and binding international law, and would further damage public confidence in our Nation's commitment to the rule of law and fundamental notions of due process.

Further, the need for a prompt hearing is never greater than where, as here, the Executive has afforded to a petitioner no judicial review. *See Rasul v. Bush*, 542 U.S. 466, 124 S. Ct 2686, 2692 (2004); *INS v. St. Cyr*, 533 U.S. 289, 301 (2001).  The deference appropriately accorded by the Judiciary to the Executive Branch in the exercise of the latter's war powers should no longer delay these proceedings. The Supreme Court ruled in *Rasul* that *habeas* petitioners imprisoned in Guantánamo are entitled to at least minimal due process, and specifically considered and rejected the proposition that judicial review will intrude upon the powers delegated to the executive under Article II.

Finally, the continued exercise of naked power by the Executive has wounded the nation's reputation abroad and threatens its institutions at home.  It imperils public faith in what

---

[8] The *habeas corpus* rules relax these return periods in cases involving prior judicial involvement, but provide no such relaxation in cases of unreviewed detentions by the Executive Branch, leaving that question to discretion of this Court.

has been a cornerstone of our freedoms: meaningful, independent judicial review. This public interest is magnified by the daily drumbeat of shameful disclosures: the military's own reports of its violation of the Geneva Conventions at Abu Ghraib Prison in Iraq, of murder in the Baghram prison in Afghanistan, of the credible accounts of U.S.-sponsored torture by surrogates abroad, and of the government's admission of using now-discredited "aggressive" interrogation tactics against Petitioner Al-Qahtani himself. *See, e.g.*, Douglas Jehl, *Army Details Scale of Abuse of Prisoners in an Afghan Jail*, N.Y.Times, Mar. 12, 2005 and Petition ¶¶ 33-48 and sources cited therein.

By contrast, Respondents do not specifically identify any countervailing public interest served by issuance of a stay, although they do complain of the administrative burden of responding to the various petitions, and a risk of inadvertent disclosure of classified information – a concern addressed in many prior cases and in the present case by the entry of a detailed protective order. A stay will not serve the public interest by prolonging the confinement of an alleged "enemy combatant," because the whole purpose of the *habeas* petition is to determine whether Petitioner Al-Qahtani was properly confined as enemy combatant in the first instance. In sum, the public interest demands that meaningful hearings in this *habeas* petition not be further delayed.

Accordingly, this Court should deny Respondents' Motion to stay proceedings and permit Petitioner Al-Qahtani to prepare for merits proceedings for his petition.

II. **THIS COURT SHOULD COMPEL RESPONDENTS TO COMPLY WITH THE ORDER TO SHOW CAUSE REQUIRING SUBSMISSION OF PETITIONER'S FACTUAL RETURN BY DECEMBER 27, 2005**

Respondents also seek to withhold all factual evidence supporting the purported basis for Petitioner Al-Qahtani's detention by moving to stay all of the merits proceedings as well as this Court's Order to Show Cause issued on December 7, 2005. Respondents' refusal to provide

such evidence is in violation of the *habeas* statute, which unambiguously states that a factual return must be filed within three days, unless that deadline is extended by twenty days. *See* 28 U.S.C. § 2243 (2003). More importantly, Respondents' request contravenes this Court's Order to Show Cause implementing the *habeas* statute's mandate that the Respondents demonstrate why Petitioner Al-Qahtani's application for *habeas* relief should not be granted.

Respondents fail to explain how submission of the written record of the completed CSRT proceeding for Petitioner Al-Qahtani poses any burden. Moreover, Respondents have had notice since October 5, 2005 of the present habeas petition and could have been preparing the CSRT file at that time. Petitioner Al-Qahtani should not suffer because Respondents have not taken any steps to meet their obligation under the *habeas* statute.

Moreover, Respondents' claim that preparation of Petitioner Al-Qahtani's factual return would be costly and time-consuming is disingenuous. As Judge Green noted in *In re Guantanamo Detainee Cases* when the government first raised concerns about its ability to submit factual returns in a timely manner for all petitioners, the mere photocopied production and review, of even hundreds of pages of a CSRT record, is hardly a substantial burden for the United States government. *See In re Guantanamo Detainee Cases*, Transcript of Hearing on Oct. 20, 2005, 31:21-33:22. And as stated above, Respondents have devoted substantial resources to making allegations against Petitioner Al-Qahtani in other nonlegal, forums and they should not be relieved of expending similar resources to file a factual return in federal court.

The Respondents' concerns about the alleged risk of disclosure of classified material raised by providing the undersigned counsel access to Petitioner's factual return are alleviated by the protective order entered in this matter and the clear guidance provided by the Department of Justice Court Security Office to counsel reviewing classified information in connection with this *habeas* petition. The undersigned counsel are officers of this Court who have agreed to comply

with the restrictions in the protective order. Moreover, Respondents have consented to providing Petitioner's counsel with access to him and any information known to him, be considered classified or unclassified. The only information contained in the factual return not readily available to Petitioner Al-Qahtani or his counsel is information about Respondents' interrogation methods, the specific statements Respondents found reliable despite the method by which the statement were obtained, and the nature of Respondents' investigation of Petitioner. This Court should not tolerate further delay by the Respondents in providing this information to Petitioner.

Finally, numerous stay orders issued in similar *habeas* petitions by men imprisoned in Guantánamo have rejected the Respondents' argument about the administrative burden and have required the Respondents submit a factual return. At least eight judges of this bench (Judges Bates, Friedman, Huvelle, Kessler, Roberts, Sullivan, Urbina and Walton) have ordered the government to make factual returns. In *Battayav v. Bush*, 05-cv-714 (RBW) (dkt. no. 12, at 3), for example, Judge Walton considered but rejected the same argument the government makes here -- that the submission of factual returns is burdensome and risks the inadvertent disclosure of classified information -- because the factual returns were necessary for petitioners' counsel to effectively represent them even in an initial meeting. Judge Bates made the same point in *Al-Anazi v. Bush*, 05-cv-345 (JDB) (dkt. no. 21), 2005 WL 1119602, at 10. Judge Urbina also rejected the same arguments the government makes here:

> As to the government's concerns regarding classified information, the protective orders entered in this case will guard against any inadvertent disclosures. Finally, the government's generic references to the expenditures of its resources and logistical burden does not persuade the court to delay ordering the return; the court is confident that the government can handle this task.

*Qayed v. Bush*, 05-cv-454 (RMU) (dkt. no. 5, at 2) (ordering the submission of a factual return within 90 days); *see also Al-Wazan v. Bush*, 05-cv-329 (PLF) (dkt. no. 37, at 1) (ordering production of a factual return within 90 days). Notably, when the government was ordered to

provide factual returns within seven days it was able to comply without issue. *See*, *e.g.*, *Errachidi v. Bush*, 05-cv-640 (EGS) (dkt. nos. 15 & 16) (ordering the Respondents to make their return within seven days, which the government did so on April 26, 2005). Accordingly, Petitioner Al-Qahtani respectfully requests that this Court require that the Respondents file a factual return to his petition by December 27, 2005, as mandated by the Order to Show Cause.

Accordingly, Respondents' Motion to avoid compliance with this Court's Order to Show Cause should be denied and this Court should require Respondents to submit a factual return for Petitioner Al-Qahtani by December 27, 2005.

## CONCLUSION

Endless procedural motions, delays, and stays can mock what our legal traditions hold most proud: timely, meaningful review by a strong and independent judiciary. Respondents have presented insufficient justification for departure from this principle.

**WHEREFORE**, Petitioner Al-Qahtani respectfully requests that this Court:

(1) Deny Respondents' Motion to Stay Proceedings and Motion to Stay Order to Show Cause;

(2) Alternatively, grant in part and deny in part Respondents' Motion, with the Stay Order specifically:

(i) requiring Respondents to preserve all evidence related to Petitioner Al-Qahtani's seizure, interrogation, and detention;

(ii) requiring Respondents to refrain from the transfer or rendition of Petitioner Al-Qahtani into the custody of a foreign government or to another U.S. facility without 30-days advance notice to this Court and to counsel;

    (iii)    requiring Respondents to provide a factual return for Petitioner Al-Qahtani by December 27, 2005;

    (iv)    requiring Respondents to provide Petitioner Al-Qahtani unobstructed access to counsel; and

    (v)    preserving sufficient flexibility to address other matters that may unexpectedly arise,

(3)    Grant such other and further relief as this Court deems appropriate.

Dated:  December 20, 2005.

    Respectfully submitted,

    Counsel for Petitioners:

    ___/s/_____
    Gitanjali S. Gutierrez
    William Goodman
    **CENTER FOR CONSTITUTIONAL RIGHTS**
    666 Broadway, 7th Floor
    New York, New York 10012
    Tel: (212) 614-6485
    Fax: (212) 614-6499