IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MOHAMMED AL-QAHTANI, et al.,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v.  ) | Civil Action No. 05-1971 (RMC) |
| ) | |
| **GEORGE W. BUSH,** ) | |
| **President of the United States,** *et al.*, ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

**RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO STAY PROCEEDINGS PENDING RELATED APPEALS**

Respondents hereby submit this reply memorandum in support of their motion to stay proceedings pending related appeals in the above-captioned case.

As an initial matter, on December 30, 2005, the President signed into law § 1005 of the Department of Defense Appropriations Act, 2006, Pub. L. No. ___, § 1005 (2005), also known as the Detainee Treatment Act of 2005, which, among other things, amends 28 U.S.C. § 2241 to remove court jurisdiction to hear or consider applications for writs of habeas corpus and other actions brought in this Court by or on behalf of aliens detained at Guantanamo Bay, Cuba. Respondents anticipate filing in the Guantanamo detainee cases, including the instant case, a motion to dismiss or for other appropriate relief based on the new law.

**ARGUMENT**

**I.   The Court Has the Authority to Grant a Stay at This Stage of the Proceedings.**

Preliminarily, there is nothing in the habeas statute that constrains the Court's broad authority to provide for an orderly schedule and otherwise manage habeas proceedings to further

an efficient expenditure of litigation resources. Indeed, pursuant to the Rules Governing Section 2254 Cases in the United States District Courts (the "2254 Rules"),[1] a court may extend the deadline for responses to habeas petitions beyond the time limits set forth in 28 U.S.C. § 2243 — the 2254 Rules do not indicate a fixed deadline for responding to habeas petitions, and they supersede the time limits set forth in 28 U.S.C. § 2243. Rule 4 provides that the judge shall "order the respondent to file an answer, motion or other response within a fixed time, or to take other action the judge may order." See also Bleitner v. Welborn, 15 F.3d 652, 653-54 (7th Cir. 1994) ("[T]he Rules Governing Section 2254 Cases in the United States District Courts, which have the force of a superseding statute, 28 U.S.C. § 2072(b) . . . loosened up the deadline for responses. Rule 4 leaves it up to the district court to fix the deadline."); Castillo v. Pratt, 162 F. Supp. 2d 575, 577 (N.D. Tex. 2001) (denying § 2241 petitioner's request for expedited consideration because "[t]he discretion afforded by Rule 4 of the 2254 Rules "prevails" over the strict time limits of 28 U.S.C. § 2243"); Kramer v. Jenkins, 108 F.R.D. 429, 431 (N.D. Ill. 1985) (denying § 2241 petitioner's motion for correction of court scheduling order because "in the

---

[1] The 2254 Rules are applicable to petitions for writ of habeas corpus other than those arising under 28 U.S.C. § 2254, such as the petitions in this case. See 2254 Rule 1(b) ("In applications for habeas corpus in cases not covered by subdivision (a) [involving persons in state custody], these rules may be applied at the discretion of the United States district court."); Castillo v. Pratt, 162 F. Supp. 2d 575, 577 (N.D. Tex. 2001) ("The Supreme Court intended the 2254 Rules to apply to petitions filed under § 2241."); Ukawabutu v. Morton, 997 F. Supp. 605, 608 n.2 (D.N.J. 1998) (The 2254 Rules "apply to petitions filed pursuant to 28 U.S.C. § 2241 as well as 28 U.S.C. § 2254."); Wyant v. Edwards, 952 F. Supp. 348, 352 (S.D. W.Va. 1997) ("[T]he Court has concluded that the § 2254 Rules were intended to apply to § 2241 cases . . ."); Hudson v. Helman, 948 F. Supp. 810, 811 (C.D. Ill. 1996) ("Thus, while the instant Petition is brought pursuant to 28 U.S.C. § 2241, not 28 U.S.C. § 2254, and involves a prisoner in federal custody, the Rules Governing Section 2254 Cases may still be applied here."); Kramer v. Jenkins, 108 F.R.D. 429, 431 (N.D. Ill. 1985) ("[A]lthough [petitioner's] petition is under section 2241, and not section 2254, the court may properly apply Rule 4 of the 2254 Rules."). Petitioners have presented no authority to the contrary.

conflict between Rule 4 of the 2254 Rules and 28 U.S.C. § 2243, Rule 4 must prevail"). Furthermore, the 2254 Rules have provided courts with the discretion to consider the burdens involved in filing responses to habeas petitions when implementing case management schedules. See Advisory Committee Notes to 2254 Rules; see also Lonchar v. Thomas, 517 U.S. 314, 325 (1996) (stating that the 2254 Rules confer "ample discretionary authority" on district courts "to tailor the proceedings" in habeas cases). Thus, this Court has the authority to grant a stay of proceedings at this juncture. See Landis v. North American Co., 299 U.S. 248, 254-55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); id. at 256 (noting propriety of stay in cases "of extraordinary public moment").

## II.     A Stay of Proceedings Is Appropriate.

There is no dispute that the resolution of the appeals of the decisions of Judges Leon and Green in Khalid v. Bush, Nos. 04-CV-1142 (RJL), 355 F. Supp.2d 311 (D.D.C. 2005), appeals docketed, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and In re Guantanamo Detainee Cases, 355 F. Supp.2d 443 (D.D.C. 2005), petition for interlocutory appeal granted, No. 05-8003 (D.C. Cir. Mar. 10, 2005), will address the core issues in the Guantanamo detainee habeas cases and, thus, determine how these cases should proceed, if at all.[2] Thus, it would be a wasteful expenditure of resources to proceed with litigation regarding the alleged rights of detainees at Guantanamo Bay when the law governing any such rights is presently in dispute and will be resolved by the Court of Appeals on an expedited basis. Several Judges of this Court, including Your Honor, have already recognized as much, and generally stayed proceedings in Guantanamo

---

[2] Oral Argument before the D.C. Circuit in these cases was held on September 8, 2005.

3

detainee habeas cases pending before them.³  Consistent with this approach, proceedings in the above-captioned case should also be stayed pending the resolution of the appeals of Khalid, et al. and In re Guantanamo Detainee Cases.⁴

Petitioner's dismissive treatment of the needless expenditure of judicial and litigation resources that would result from additional proceedings in this case ignores the cascade effect that would follow from not staying the case.  See Pet's Opp. at 13-14.  Presently, there are more

---

³ See, e.g. Deghayes v. Bush, No. 04-CV-2215 (RMC) (dkt. no. 7); Saib v. Bush, 05-CV-1353 (RMC); Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 16); Adem v. Bush, No. 05-CV-0723 (RWR) (dkt. no. 13);  Mangut v. Bush, No. 05-CV-1008 (JDB) (dkt. no. 2); Salaam v. Bush, No. 05-CV-1013 (JDB) (dkt. no. 2);  Al Mohammed v. Bush, No. 05-CV-0247 (HHK) (dkt. no. 18); El-Mashad v. Bush, No. 05-CV-0270 (JR) (dkt. no. 29); Al-Adahi v. Bush, No. 05-CV-0280 (GK) (dkt. no. 35); Al Joudi v. Bush, No. 05-CV-0301 (GK) (dkt. no. 26); Al-Wazan v. Bush, No. 05-CV-0329 (PLF) (dkt. no. 15); Al-Anazi v. Bush, No. 05-CV-0345 (JDB) (dkt. no. 21); Alhami v. Bush, No. 05-CV-0359 (GK) (dkt. no. 20); Ameziane v. Bush, No. 05-CV-0392 (ESH) (dkt. no. 12); Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 8); M.C. v. Bush, No. 05-CV-0430 (ESH) (dkt. no. 10); Kabir v. Bush, No. 05-CV-0431 (RJL) (dkt. no. 10); Qayed v. Bush, No. 05-CV-0454 (RMU) (dkt. no. 4); Al-Shihry v. Bush, No. 05-CV-0490 (PLF) (dkt. no. 14); Aziz v. Bush, No. 05-CV-492 (JR) (dkt. no. 16); Qassim v. Bush, No. 05-CV-0497 (JR) (dkt. no. 14); Al-Oshan v. Bush, No. 05-CV-0520 (RMU) (dkt. no. 12); Tumani v. Bush, No. 05-CV-0526 (RMU) (dkt. no. 5); Al-Oshan v. Bush, No. 05-CV-0533 (RJL) (dkt. no. 6); Al Shamri v. Bush, No. 05-CV-0551 (RWR) (dkt. no. 10); Salahi v. Bush, No. 05-CV-0569 (JR) (dkt. no. 8); Mammar v. Bush, No. 05-CV-0573 (RJL) (dkt. no. 5); Al-Sharekh v. Bush, No. 05-CV-0583 (RJL) (dkt. no. 9); Magram v. Bush, No. 05-CV-0584 (CKK) (dkt. no. 9); Al Rashaidan v. Bush, No. 05-CV-0586 (RWR) (dkt. no. 10); Mokit v. Bush, No. 05-CV-0621 (PLF) (dkt. no. 13); Al Daini v. Bush, No. 05-CV-0634 (RWR) (dkt. no. 10); Battayav v. Bush, No. 05-CV-0714 (RBW) (dkt. no. 12);; Hamlily v. Bush, No. 05-CV-0763 (JDB) (dkt. no. 10); Imran v. Bush, No. 05-CV-0764 (CKK) (dkt. no. 6); Hamamy v. Bush, No. 05-CV-0766 (RJL) (dkt. no. 6); Hamoodah v. Bush, No. 05-CV-0795 (RJL) (dkt. no. 13); Rahmattullah v. Bush, No. 05-CV-0878 (CKK) (dkt. no. 3); Nasrat v. Bush, No. 05-CV-0880 (ESH) (dkt. no. 4); Slahi v. Bush, No. 05-CV-0881 (RWR) (dkt. no. 5); Chaman v. Bush, No. 05-CV-0887 (RWR) (dkt. no. 7); Gul v. Bush, No. 05-CV-0888 (CKK) (dkt. no. 3); Basardh v. Bush, No. 05-CV-0889 (ESH) (dkt. no. 4); Shaaban v. Bush, No. 05-CV-0892 (CKK) (dkt. no. 3); Tohirjanovich v. Bush, No. 05-CV-0994 (JDB) (dkt. no. 4); Al-Khalaqi v. Bush, No. 05-CV-0999 (RBW) (dkt. no. 3); Kahn v. Bush, No. 05-CV-1001 (ESH) (dkt. no. 3).

⁴ The Court presumably would retain discretion to modify a stay of proceedings in a particular case should circumstances arise truly warranting a lifting of the stay.

than 180 habeas cases pending on behalf of well over 300 detainees at Guantanamo Bay; the majority of those cases and petitioners were not subject to the decisions of Judges Leon and Green in <u>Khalid, et al.</u> and <u>In re Guantanamo Detainee Cases</u>. A decision to allow proceedings to go forward pending the resolution of the appeals could precipitate a chain reaction — the scores of petitioners in other pending and future Guantanamo Bay detainee habeas cases, seeking parity of treatment, would request the Court to allow additional proceedings in those cases, perhaps even by lifting or modifying stays that have already been entered. This scenario is exactly what Judge Green aimed to avoid when she denied petitioners' motion to reconsider her order granting a stay pending appeal "in light of the substantial resources that would be expended and the significant burdens that would be incurred should this litigation go forward." <u>See</u> Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in <u>In re Guantanamo Detainee Cases</u> (Feb. 7, 2005) (Green, J.). Indeed, any proceedings in this case that are permitted to go forward very likely would need to be revisited or relitigated, and may be shown to have been altogether unnecessary, once the Court of Appeals provides guidance regarding handling of the habeas claims of Guantanamo Bay detainees such as petitioner Al-Qahtani. Thus, in the interest of efficiency of judicial and litigation resources, as well as to minimize administrative burdens, this Court should hold proceedings in the above-captioned case in abeyance pending the outcome of the appeals of the decisions by Judges of this Court in the other Guantanamo Bay detainee cases. Additionally, to the extent petitioner's have alleged concerns about mistreatment of petitioner, Pet's Opp. at 8-9, 14, the entry of a stay presumably would not deprive the Court of jurisdiction or discretion to modify the stay should circumstances arise truly warranting prospective relief.

In addition, petitioner unfairly dismisses the fact that "the law in this Circuit is unsettled." Al-Marri v. Bush, No. 04-CV-2035 (GK) (dkt. no. 26). See Pets' Opp. at 11-13. Petitioner argues the case should not be stayed at this time because the Guantanamo Bay cases might eventually be appealed to the United States Supreme Court after a decision in the D.C. Circuit Court of Appeals. Id. at 14-15. Despite that possibility, it simply makes no sense to proceed with the merits of the above-captioned cases when the core issues they present will be resolved by the Court of Appeals on an expedited basis and appeal to the Supreme Court is speculative at this juncture.

In the event the stay in this case is modified to allow the submission of factual returns, however, it could only be done pursuant to a coordinated and reasonable schedule, taking account of the fact that petitioners in all the recently filed cases are seeking factual returns and given the logistical burdens posed by an undertaking to produce returns in the cases. Though the submission of factual returns should not go forward at all, a schedule for any such undertaking should be no more restrictive than is necessary; for example, a schedule for the rolling production of factual returns in these (and potentially other) cases over anything less than the next 10 to 12 weeks would be unreasonable.[5] See e.g., Al-Anazi, No. 05-CV-0345 (JDB) (dkt.

---

[5] Petitioner's request for a more expedited schedule, see Pet's Opp. at 23, if granted, would result in an unnecessary logistical burden for respondents. Each factual return must be obtained from the Department of Defense ("DoD"), and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations and Executive Orders. Respondents must then prepare both public and classified versions of the factual returns for submission to the Court and counsel. Further, submission of these returns will increase the risks of inadvertent or other disclosure or compromise of classified information. Given that the D.C. Circuit will be considering the proper scope of these proceedings, including whether the claims of petitioner can be dismissed without reference to specific factual returns for petitioner, there is no justification to incur substantial burdens on government resources and increase the risk to national security by

no. 21) (imposing 120-day schedule); Al-Joudi, No. 05-301 (GK) (dkt. no. 26) (imposing 90-day schedule); Al-Adahi, No. 05-280 (GK) (dkt. no. 35) (imposing 90-day schedule); Ameziane, No. 05-CV-392 (ESH) (dkt. no. 12) (imposing 90-day schedule); Qayed, No. 05-CV-0454 (RMU) (dkt. no. 5) (imposing 90-day schedule); Battayav, No. 05-CV-0714 (RBW) (dkt. no. 12) (imposing 120-day schedule).

### III.    The Court Should Not Condition a Stay in This Case on the Imposition of the Preliminary Injunctive Relief Sought By Petitioner.

Petitioner seeks to condition a stay in this case on a requirement of 30-days' advance notice of any transfer of petitioner from Guantanamo as well as a preservation order. Pet's Mem. at 22. In seeking such conditions, petitioner attempts to sidestep his burden of demonstrating that he is entitled to preliminary injunctive relief. Petitioner's attempt, however, must fail because his requests are injunctive in nature, and preliminary injunctive relief "is an extraordinary and drastic remedy" that should not be available "unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original). Preliminary injunctive relief is not warranted unless the movant can clearly demonstrate that (1) the movant will suffer irreparable injury in the absence of an injunction; (2) the movant has a substantial likelihood of success on the merits with respect to the requested relief; (3) the injunction would not substantially injure other interested parties; and (4) the injunction would further the public interest. See Al-Fayed v. CIA, 254 F.3d 300, 303 (D.C. Cir. 2001).

Petitioner cannot circumvent these requirements merely by seeking the same measures of

---

providing petitioner's counsel access to factual returns which may ultimately prove unnecessary.

7

relief in the form of a condition on a requested stay.  Two other decisions in related Guantanamo detainee cases have rejected such tactics attempting to condition a stay on an advance notice of requirement.  In Al-Anazi v. Bush, 370 F. Supp. 2d 188, 199 n.11 (D.D.C. 2005), the Court rejected petitioners' request for advance notice of transfer and explained that "if petitioners cannot meet the prerequisites of a motion for preliminary injunction (as the Court concludes), it is unlikely they should receive that same relief through the backdoor of a stay."  Similarly, in Battayav v. Bush, No. 05-CV-714 (RBW), Order at 3-5 (May 18, 2005) (dkt. no. 12), the Court determined that petitioners' requests that any stay order imposed be accompanied by an order requiring respondents to provide 60 days' notice of any Administrative Review Board proceeding were effectively a request for preliminary injunctive relief without any factual support.  The Court stated that petitioners' request for 60 days' notice was "in effect a motion for a preliminary injunction," but petitioners made "no attempt to show that they satisfy the criteria for obtaining injunctive relief, e.g., irreparable harm and likelihood of success on the merits." Id. at 4-5.  Likewise here, petitioner makes no showing justifying the requested 30-days advance notice of transfer.  For this reason, as well as the reasons stated in the attached memorandum in Al Hela v. Bush, Civ. A. No. 05-1048 (RMU), on June 3, 2005 (dkt. no. 10), petitioner's request should be denied.

     Petitioner also requests the Court to condition a stay in this case on the imposition of a preservation order requiring Respondents to "preserve all evidence related to Petitioner Al-Qahtani's seizure, interrogation, and detention."  Pet.'s Opp. at 22.  Petitioner's request for this additional injunctive relief should be rejected.  Petitioner's approach would circumvent the

preliminary injunctive relief standards, and it thereby admits of no limiting principle.[6]  See Battayav v. Bush, No. 05-CV-0714 (RBW) (dkt. no. 12) (denying a request for a preservation order because it was not properly before the court as petitioners had simply made a request to preserve documents, failing to make any showing that the equitable relief sought was warranted.)[7]

In any event, entry of a preservation order in not appropriate.  This case is utterly devoid of any circumstances warranting a preservation order.  First, petitioners have made no showing that a preservation order is actually necessary, that is, that absent an order a significant risk exists that evidence will be destroyed.  See Pueblo of Laguna 60 Fed. Cl. at 138.  As argued previously

---

[6] See Al-Anazi v. Bush, No. 05-CV-345 (JDB), Memorandum Opinion (Apr. 21, 2005) at 19 n.11 (dkt. no. 22) ("if petitioners cannot meet the prerequisites of a motion for preliminary injunction [requiring advance notice of transfer] (as the Court concludes), it is unlikely they should receive that same relief through the backdoor of a stay").

[7] The weight of authority is that the four requirements for issuance of an injunction must be satisfied before a preservation order may issue.  See Madden v. Wyeth, No. 3-03-CV-0167-R, 2003 WL 21443404, at *1 (N.D. Tex. Apr. 16, 2003); Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc., Civ. No. 3-94-784, 1995 WL 783610, at *3-*4 (D. Minn. Oct. 20, 1995); Humble Oil & Refining Co. v. Harang, 262 F. Supp. 39, 42-43 (E.D. La. 1966).  Other courts have used a modified, multi-factor analysis for the issuance of preservation orders.  See Capricorn Power Co. v. Siemens Westinghouse Power, 220 F.R.D. 429, 433-434 (W.D. Pa. 2004) (focusing on "1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved"); see also Pueblo of Laguna v. United States, 60 Fed. Cl. 133, 137-38 (Fed. Cl. 2004) (due to "very potency" of inherent power of a court to issue preservation orders and the fact that the Supreme Court has "cautioned inherent powers must be exercised with restraint and discretion," proponent of preservation order must demonstrate that the preservation order is necessary – absent order significant risk exists that evidence will be destroyed – and not unduly burdensome or overbroad); but see Capricorn Power, 220 F.R.D. at 434 n.2 (criticizing Pueblo of Laguna test as lacking "adequate precision" and "sufficient depth of analysis").

in Guantanamo detainee cases in this Court, there is no evidence of document destruction and respondents have numerous independent reasons for ensuring the preservation of the documents in question. See El-Banna v. Bush, No. 04-CV-1144 (RWR) Resp. Memo. in Opp. to Pets.' Mot. for Leave to Take Discovery and for Preserv. Order, filed January 12, 2005, at pp. 23-24 (dkt no. 111); Al-Marri v. Bush, No. 04-CV-2035 (GK) Resp. Memo. in Opp. to Pets.' Mot. for Leave to Take Discovery and for Preserv. Order (dkt no. 14); Battayav v. Bush, No. 05-CV-714 (RBW) Resp. Reply Memo. in Support of Mot. to Stay Proceedings Pending Related Appeals and for Continued Coordination (dkt no. 11). In fact, Judge Bates recognized as much when he stated in another Guantanamo Bay detainee case that "[t]he Court is not predisposed to assume that the government would alter or destroy records in its possession absent a court order, and is therefore inclined to require that, at the very least, a party seeking a preservation order against the government make a credible showing of a significant risk of alteration or destruction." Al-Anazi v. Bush, 05-CV-0345 (JDB) (dkt. no. 35)

     Moreover, respondents are well aware of their obligation not to destroy evidence that may be relevant in pending litigation. Administrative agencies are entitled to a presumption that "that they will act properly and according to law." See, e.g., FCC v. Schreiber, 381 U.S. 279, 296 (1965). Even in a case involving private parties, "[t]o supplement every complaint with an order requiring compliance with the Rules of Civil Procedure would be a superfluous and wasteful task, and would likely create no more incentive upon the parties than already exists." Hester v. Bayer Corp., 206 F.R.D. 683, 685 (M.D. Ala. 2001); see also Pepsi-Cola Bottling Co., 1995 WL 783610, at *3 ("To further embellish the grave importance of document preservation, through an

administratively demanding mechanism, seems inordinate, at best.").[8] Furthermore, petitioner's request to preserve "preserve all evidence, documents, and information relating to Petitioner's case," Pet.'s Opp at 18, is overbroad and potentially burdensome to the extent it goes beyond what might otherwise be permissible with respect to any discovery that might ever be appropriate in a habeas case. See Harris v. Nelson, 394 U.S. 286, 296, 300 (1969) (discovery available in habeas cases only in narrow circumstances and upon showing of good cause).

Accordingly, petitioner has the burden to make a clear showing that he is entitled to the injunctive relief he seeks, which he has not done. Petitioner has failed to present a valid factual or legal basis for neither his request that respondents provide 30 days' advance notice of any intended removal of petitioner from the Guantanamo Bay Naval Base nor justification for a preservation order. Thus, relief is inappropriate and should be denied.[9]

---

[8] In addition, a preservation order is further unnecessary because Judge Kessler has already entered an order to "preserve and maintain all evidence and information regarding the torture, mistreatment, and abuse of detainees now at the Guantanamo Bay detention facility." Al-Marri, No. 04-CV-2035 (GK), Order (dkt. no. 25) (Mar. 7, 2005). See also, Al-Anazi v. Bush, 05-CV-0345 (JDB) (dkt. no. 35) (denying as moot petitioner's request for a preservation order because "respondents have a preexisting duty to preserve the very information that this motion addresses [i.e., information related to alleged mistreatment of Guantanamo detainees], pursuant to court orders issued in Al-Marri, No. 04-CV-2035 (D.D.C. Mar. 7, 2005) (order), Anam v. Bush, No. 04-CV- 1194 (D.D.C. June 10, 2005) (order), and Abdah v. Bush, No. 04-CV-1254 (D.D.C. June 10, 2005) (order).")

[9] It is unclear to Respondents what relief is sought by petitioner when he asks the Court for an order "requiring Respondents to provide Petitioner Al-Qahtani unobstructed access to counsel . . ." Pet's Opp. at 23. All access to counsel will continue to be governed by the Protective Orders entered in this case on October 26, 2005, pursuant to a consent motion by the parties.

**CONCLUSION**

For the reasons stated in respondents' motion to stay proceedings pending related appeals and for continued coordination, and in this supporting reply memorandum, this Court should stay further proceedings in the above-captioned cases pending the appeals of Judge Leon's decision in <u>Khalid, et al.</u> and Judge Green's January 31, 2005 decision in <u>In re Guantanamo Detainee Cases</u> and deny petitioner's requested conditions on such a stay.

Dated:  January 3, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel

   /s/ James J. Schwartz
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ (D.C. Bar No. 468625)
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7310
Washington, DC  20530
Tel:  (202)616-8267
Fax:  (202) 616-8202

Attorneys for Respondents